United States v. Alejandro Martinez and 14-1605 United States v. Paolo Rosario. Good morning. May it please the Court, I'm Merrick Schnipper here on behalf of Alejandro Martinez. The co-defendant confession in this case gave the only explanation of how Martinez and Rosario ended up in the Yolo boat, who put them there, how they got the cocaine they were carrying, and what they intended to do with it when they reached Puerto Rico. The confession was the only source of numerous inferences the prosecutor urged against Martinez in her closing argument, and the confession itself powerfully incriminated Martinez without reference to any other evidence presented at trial. Introduction of Rosario's confession at the defendant's joint trial, therefore, even in its fully redacted form, violated Martinez's Sixth Amendment confrontation rights. Rosario's confession performed a truly unique role in this case. It gave the only explanation of something at trial that truly begged for an explanation like few other things do. How two defendants ended up 20 miles from land in a small outboard boat throwing millions of dollars' worth of cocaine into the water. Now, the law does not require the government to explain the overall context of how people end up possessing cocaine in a boat, although the indictment itself specifies that this was a conspiracy not only between and among Rosario and Martinez, but also among persons unknown, and these persons unknown, of course, are only referenced as well in Rosario's confession. But once the government decides that it wants to try to introduce this confession in the joint trial, it needs to reckon with the fact that when you take two people who are accused of doing the exact same thing and being in a partnership throughout the criminal action, and you give a full explanation and contextualize the role of one and remain utterly silent on the role of the other, what you're doing is really straining the capacity of a jury to put to its mind the reality, which is that that confession explains the role of both. You know, one of the things which I find troubling in this case, from your perspective, is when the boat was seen, as I understand it, the surveillance never left the boat. There was testimony in the case that they saw both individuals in the boat throwing bundles out of the boat. That's correct. The testimony also in the case is that the government was able to keep those bales in sight and that they were picked up and they were shown to have cocaine in them and that no one on the boat left the boat so that when they intercepted the boat, two defendants were on the boat. And the cocaine was not. It was in the sea. But it was all constantly under surveillance. So there was no intervening back. There were no other boats, et cetera. So why does, even assuming you're correct, why does it make any practical difference in the case? Well, there's one small record issue, which is that there wasn't visual surveillance of the bales the entire time, I believe. What happened is that immediately a cutter was dispatched with knowledge of the prevailing currents and it moved about a mile later and picked up the bales. So they weren't fully in visual surveillance, but they went right where everybody knew they were going to go. There was no other boat in sight? No other boat in sight. No other place did it come from? No other source. Right. Okay. The reason it really matters is that the government's case depends not only on proving the possession of the cocaine, which obviously it has proven. That there was a conspiracy. There was a conspiracy. And the functioning of the conspiracy, while not necessarily an element of the crime, was a very significant part of the government's proof of its overall case and the contextualizing it did to explain what was actually going on. For instance, one of the two charges is conspiracy to import into the United States. Now, other than the Rosario Confession, what they basically have to prove that is differential prices. They were close to the border. Well, they were still 20 miles from the border. They were halfway. That's the United States. Yes. So they were pointed towards it. I'm not saying the evidence is insufficient. But in terms of the importance that this confession played in the case, it's that it provided the only explanation of what was really going on here. And what it did was basically take the case out of, here's two guys who own some cocaine and we're taking it over to Puerto Rico so they can make a bunch of money from it, and into these are two guys who are participating in a larger cartel-type operation. The only evidence of that larger cartel-type of operation existed with regard to Defendant Rosario. There was nothing in there in the record at all with regard to Defendant Martinez on that very important question. And I say very important because that's exactly what the prosecutor used in her closing argument to basically try to wrap the case up for the jury. And she specifically said, I told you at the beginning of this case, look for the agreement. And then she says, well, how do we know that Martinez agreed to do this with Rosario? They were going to Puerto Rico to deliver the cocaine to the folks who were waiting there to take it from them. Well, the only folks who were waiting there to take it from them were described in Rosario's confession. So, you know, we really have, there's really two brutal issues presented. One is the impact of the testimony itself on the jury. The second is the error by the prosecutor in arguing the confession in closing as to Martinez. Two things on this. I also want to hear about the certification issue. But on the, what the record shows about what the objection was below. With regard to the Bruton. With regard to the Bruton. There's a point at which you, I don't know if you were the. I was not trial counsel. Okay, but the trial counsel accepts that a redacted version, which it's going to mention only Martinez, can go forward. Am I wrong in characterizing as accepting that? Well, you're wrong in him saying I withdraw my Bruton objection. He says I understand this is what you're going to do, but then he still says, judge, even in fully redacted form. He continues to maintain that. And I can point you to that in my brief. Okay. But even in fully redacted form, the inference is inescapable with a two-person vote and the charges we have here. Okay, and then on this. Did he re-ask for severance at that point? He did. That was the final time. That was the final time. When he asked about the severance. And I was denied. Okay. And then the second point is just this phrase you just used, inescapable inference, which I take as an important modifier, that it be an inescapable inference given our precedent. Yes, it is. So could you just help me understand how you understand what that means when it's inescapable? Because obviously the precedent suggests that when an inference is the thing that ties to the confession, there's no Bruton problem. Right. So we've also said that in a case in which the redaction takes the form of just withdrawing the name, but saying that there's a second person there who everybody knows who it is, that's a problem. Right. Okay, here we don't have that issue because we have just one person. We have what we would call full redaction. Full redaction. So how do you propose for us to decide this case in a way that's faithful to the notion that Bruton is not violated when the thing that connects you to the confession is an inference, even, you know, an inference that would be sufficient to support a conviction? Sure. So I hear three questions. The first one is the nomenclature question, which I should very quickly say inescapable is really my term, powerfully implicates the defendant without reference to other evidence is the term from Gray v. Maryland. So that's more of the key term that should be used. And literally that can't be true, that just the statement alone about Martinez does not powerfully implicate him without other evidence. There has to be. This is specifically what they say about this court has said in the Vega-Molina case and what the Supreme Court said in Gray is that it's not simply a question of, like, you take it out of the context of the trial and you just look at the statement. You look at the statement in the context of the trial, not assessing after all the evidence has come in, as was said, to be improper in Richardson. But what you do is you look at the nature of the charges themselves, the allegations, and you say in the context of that, if this is the first piece of evidence introduced at trial, would the powerful inference be that it implicated? But here's what I don't understand. Why wouldn't it be that there would be a powerful inference that he was on a boat with a person that had this purpose? Sure. But what would be the powerful inference that he shared that purpose, apart from the surveillance that shows him throwing the cocaine out of the boat? Well, I think that, you know, to be on the boat with the person with the purpose, to be on the boat with the person who had that purpose at the time that purpose was acquired, you're really getting very close to saying, here, we work together. Because what he's really saying, the full, the unredacted confession as described in Valdir is, Martinez and Rosario went together. They met at the travel agency. But that's the whole point of the redaction is that they didn't go together. So all we know is one went on. And then off I went to Puerto Rico. So obviously at some point between off I went to Puerto Rico, where there's nothing but water between me and Dominican Republic and Puerto Rico, Martinez joined the group. So all we know is he went on the boat. Well, that is all the jury knows. He went on the boat. He went on the boat with a person who was working for the cartel, that received the drugs from the shadowy associates. He was told to go to Cabo Rojo. And what's the defense here? What's his defense here? His defense here is some version of you haven't proved that I was sharing the conspiracy with Martinez. The defense here. I mean, with Rojas. It's Rosario. Rosario. The defense here, in terms of the defense I'm raising, is a brutal objection that requires retrial, is that there is no way for the jury to separate the story of how Rosario came to be doing what he's doing without also attaching that story to Martinez. I mean, you can simply say, well, I can invent a way that Martinez would not have been part of that conspiracy that he dropped, parachuted out of the sky five miles out. I mean, there's a million possibilities. But the powerful inference that the story of how he was going to participate in the crime. Why wouldn't he have just gone on the boat without knowledge of what the other was up to? Well, it's certainly possible. Again, the question is what would be the impact on the jury of introducing the redacted confession. Sorry. Okay, well, I'm going to ask you a practical question. Let's assume we agree that you're right and we reverse this to your client and say he's entitled to a new trial, but the other defendant, we do not. And then there's a new trial. And he testifies against your client and says, we were in this together. He knew exactly what we were doing. And so where are you? Well, I mean, if that happened, I would say we would be roughly in the same position we're in now. We are now. And so what I'm troubled by, I am troubled by the fact of non-severance. I'm not sure it makes any difference in this case, given the facts. Well, I think, and when you get into the non-severance and what makes the difference, that's what I was trying to say in my reply brief, a little bit about the difference between harmlessness and sufficiency. Because obviously you never have this confession in the trial at all if it is just excluded. You still have sufficient evidence to convict. There's weaker stuff on certain points, but you've got sufficient evidence. I'm not going to contest that. But the harmlessness question is, well, did this have an impact on the trial? Because it's a constitutional right. And when you've basically got a co-defendant non-testifying confession that is really providing the only interpretive architecture for the entire understanding of the conspiracy, and then I really do think it's important to point out, both because the Supreme Court in Richardson and this Court in Vega Molina recognize it as an independent, prudent violation, that the prosecutor makes three very powerful and discreet points in her closing that tie Martinez directly back to the plan described in the confession, including, she says, a bunch of drug traffickers don't put some guy that they don't know in their boat with $2 million worth of their cocaine. He was heading to Puerto Rico to deliver this cocaine to someone else. And you've got to, they, the drug traffickers, got to put somebody else with Rosario in this boat to make sure Rosario doesn't run off with their $2 million worth of cocaine. I mean, these are inferences that only, only have their source in Rosario's confession. The DEA agent who provides very limited expert testimony, it's really just about pricing. He never talks about the structure or the roles that these small boats play in the drug-moving business. So that really is the sole source of what she's arguing in her closing. And that, of course, has been recognized as an independent violation. You're almost out of time, but can you just address the certification issue? Sure. And in particular, the part that I'm interested in is the part which, I guess you suggest, there's no admissible evidence with respect to whether there was ever any statement from anyone on the boat that it was registered as a Dominican vessel. Right. So that's my, I raised the hearsay issue, which my predecessor counsel raised below. And the question really there is whether the question here is really whether the law, which provides that the response of the nation is conclusively proved by the certification, still requires that initial statement of either I made a statement of nationality or I declined to make one to be proved under the rules of evidence. I say it does simply by basic rules of statutory construction. When you look at that, this court in Dowdell basically said that 8038. Is it clear the rules of evidence apply to this preliminary proceeding? Well, it's only clear to them that it does in the sense that there's never been a ruling that they don't and there wasn't a ruling here. I do agree with you. It's sort of a punky question because it's proved to the court preliminarily by the preponderance standard. But I don't, there isn't a provision like there are in other preponderance judge found things, talking about relaxing the rules or reliable hearsay. And I haven't found any case laws talking about reliable hearsay in this context. Why isn't the statement of the person who made the assertion in Dominican registry in admission of a party opponent, and why isn't it admissible against the other defendants a co-conspirator statement? Well, I think it's pretty clear that the conspiracy is over at the time they're being interdicted is one answer to that question. Then there's still the question, so right, that's the question about co-conspirator. Then obviously if you have kind of a double rootin' issue or a double, you know, non-testifying co-defendant issue if you're going to address it as a statement by a party opponent without making a statement of the conspiracy. The real question in Dowdell, this court talked about the law enforcement exception from 8038 not applying to observations made by law enforcement personnel predicate to an arrest or as the documenting the active police working contrasted it to booking statements and ministerial statements of that sort. So the real MDLEA issue I see is that it's certainly under the, unless you decide that that rule of evidence is inapplicable, that is clearly a hearsay statement that was objected to and is the only evidence of that prong of the international jurisdictional finding. If there's enough, anything more, I'll rest on my brief. Thank you. Thank you. The first thing I want to note is that since the appeal was filed in the district court, a motion was filed to reduce the sentence pursuant to 3582, and now it's granted so the court should note that the sentence was reduced from 210 months for Mr. Rosario down to 168. This was during the pendency of the appeal? Yes. Down to what now? 168. Could you just make a 28-day limit just explaining what's happened to us? Just send that to us. Thank you. There's a document. Okay. Okay. So I think what happens in this case is that the district court confuses the issue of jurisdiction under the MDLA. The district court takes an absolute position that under the MDLA, a defendant cannot challenge the State Department certificate for any purpose. I don't think that's what the First Circuit has said. I don't think that's what the statute says. The Fifth Circuit notice noted in the case that was cited in Cardales by the First Circuit that the Congress, in enacting the MDLA and modifying the MDLA, only stated that the defendant has no standing to challenge the State Department certificate when it complies with the MDLA under international law. And the district court treats it as if there's no standing to challenge it at all. Once the State Department's in the certificate, that's conclusive proof. That basically renders the State Department certificate superfluous because it could be anything. There's no restriction on what the State Department certificate can say. In this case, it's particularly deficient because it specifically does not identify the vessel in question. And the district court precluded, improperly precluded, any inquiry into whether the State Department had complied with the Coast Guard, the government, had complied with domestic law, with the provisions in the MDLA itself, which required it upon the assertion of nationality by Mr. Rosario, Dominican Republic nationality, to go to the Dominican Republic and ask about the correct vote. Ask the vessel that they've seized, Dominican Republic, do you assert authority over that vote? The district court precluded any inquiries to whether the government had actually complied with that or not. There's nothing in the record which establishes whether the government inquired over the correct vote. So there's nothing in the record as to what the Coast Guard asked of the Dominican Republic? Right, we don't know. We know what the Coast Guard reported in their logs. We don't know anything about the actual transmission from the Coast Guard to the Dominican Republic. There was a beginning of a line of questioning along that effect, and the judge basically blocked that. And then there was a long argument over the jurisdictional issues. But you concede that the people in the boat claimed it was a Dominican-registered boat? Yes. Well, Mr. Rosario says that. Yes, he says it's the Dominican Republic. That's why they called it the Dominican Republic. And what are you basing that on? Because as I understand, Martinez, he's contesting whether there was any evidence showing that that statement was made. There's evidence, I think. I don't have an exact cite in the record, but there is a cite in the record that Mr. Rosario says it's the Dominican Republic. And there was a name on the transmission of the boat. Right, Alcantino, as opposed to Alicantino. Well, that was what came back. Right, it was the Alicantino that was on the boat. Your claim, as I understand it, is that we don't know whether the government gave the correct name to the Dominican Republic, correct spelling I should say, and that the Dominican Republic responded with the incorrect name. Right, we don't know whether the government made, because it was precluded, because the judge said there's absolutely no standing to challenge under domestic or international law, what actually transmission went between the Coast Guard and the Dominican Republic. These requests are supposed to not allow the defendants to raise the question, but you say this is just an evidentiary question. Wouldn't that be true in every single one of these cases that somebody would say, well, we don't really know what they asked, and therefore we're going to have mini trials in every one of these as to what they asked. Right, but this is a question of statutory interpretation. Under the MDLA itself, not a question of international law. In the cases that are cited, those are cases where basically there's a claim that there was a violation of international law, that the Bolivian officer wasn't identified, and it was one as to the timing of the request. But you can see the certification is conclusive of the question of whether the country that was asked as to whether it was their vessel, their answer as represented in the certification, the certification is conclusive of that question, isn't it? It's not conclusive as to that question in this case. In general, it is conclusive. If it's complete, it would be conclusive. What do you mean by complete? In other words, what you're saying here, I think, and correct me if I'm wrong, because it comes back either misspelled or slightly different than what appeared on the transom, then you're entitled to a separate trial on what the government said. Well, let's assume that the government said, well, we set the name that was on the transom, and something came back from the Dominican Republic saying two things. One, we don't find it, and two, we don't care what you do, and therefore it becomes a stateless vote and the United States can do what it did. I think if that were the case, that would probably be sufficient. But that inquiry was blocked, so we don't know. In effect, the fact that it may be a simple spelling error, it could also be that there were two different vessels, like the Queen Elizabeth and the Queen Mary, and they have the Queen Elizabeth, but they're asking for permission to seize the Queen Mary. We don't know if that. So to the extent the State Department certification is conclusive, there has to be. Is it conclusive as to whatever was asked? It's conclusive as to whether it was asked about the right vote. In other words, in this case, the State Department certification, if they ask about the right vote, but the certification refers to a slightly different spelling, is it conclusive as to the question posed by the Coast Guard? I think that it would be, but we don't know in this case because the judge precluded that inquiry as to what was asked by the Coast Guard. Why can't the judge, based on the certification, draw an inference, if it's sufficient on the record, that by preponderance of the evidence that what was asked about was the boat in question? Well, two things about that. One is he didn't do that, and the second thing is there's evidence in the record from the Dominican Republic that the response is to a boat that was different from the vessel that was seized. So to the extent that the DR made a clerical error, a typo error, I think that would be a question of international law, and the State Department certificate would be conclusive. But to the extent that the government, in effect, asked about the Queen Elizabeth when it had seized the Queen Mary, then I think the State Department certificate is not valid. You're not just taking the inference that the boat had a name on it. You'd have to be saying that we should say that the right inference would be that because the response came back with a slightly different name, they must have asked about the wrong boat, rather than that they asked about the right boat and this was the response they got. Well, I think that under First Circuit law, or if you go back to the Mitchell case, the government needs to prove by a preponderance of evidence that, in fact, they asked about that the certificate is conclusive, that it's conclusive, only to the extent they ask about the right vessel. And even though the spellings are close, there apparently are two different vessels. And just so I understand one last thing, procedurally, when he first made the determination that the MVLA, quote, jurisdictional issue was satisfied, there was no objection at that point. That's correct. But under Rule 12, an objection as to jurisdiction can be made at any time. And that would be then dependent on us finding that this is actually jurisdictional in the strong sense that, like an Article III matter as opposed to whether it's just a statutory prerequisite. Right, because our argument would be that if there was no jurisdiction under the MVLA, then the government had no jurisdiction over the vessel and the people in the vessel at the time. Thanks. One last question. Oh, go ahead. So are you saying that the certificate, that there's a relevance question and that the government bears the burden by preponderance of establishing the relevance of this certificate to this case and they can do that, either the judge potentially could draw the inference based on the four corners of the certificate, but didn't do that in this case. Correct. Or there needs to be evidence that shows that the question asked was about the vote in question in the case such that, therefore, the certificate is relevant and then becomes conclusive evidence. Right. I think that in this case the judge should have allowed questioning, not necessarily before the jury since it's a jurisdictional question. There should have been, in effect, a mini-hearing as to, once it was raised, as to whether the government had complied with the four corners of the MVLA in claiming jurisdiction under the law. Does there have to be an offer of proof? I think that would have been up to the discretion of the judge how he wanted to hold the hearing, but he precluded that by just basically saying it doesn't really, the judge basically says it just doesn't matter, there's no standing, it just doesn't matter because it's plain sight, there was cocaine on the boat, off the boat, in the bails, they were on their way to Puerto Rico, this is basically a ridiculous question, that's basically how he treats it. Did you want, you okay? Well, I, oh, sorry. Okay. No. Thank you. Thank you. Thank you. Good morning, Your Honors, and may it please the court. Dave Lieberman for the United States. The government is asking this court to affirm the defendant's conspiracy convictions under both the MDLAA and separately Title 21. I think it would be easiest to begin where the defense counsel left off and start talking about the MDLAA. Just as a threshold matter, none of these claims relate to the Title 21 convictions, those stand irrespective of what happens to the MDLAA counts. On a procedural matter, something that the court brought up, the government tendered the secretary's certification to the district court in a pretrial motion. No objection was lodged, hearsay or anything else, and the district court in Document 68 finds jurisdiction under the statute and then also accepts the secretary's factual representations in that determination. And as far as the government's view is, at least on the facts, all dispute should have ended there. It is then at trial where the defendants repeatedly, in their cross-examination of government witnesses, try to ask questions or introduce facts that relate to the secretary's certification. And in the government's view, that's not the right form. All of that should have been raised pretrial. So the district court did entertain legal arguments pertaining to the validity of the secretary's certification in the Rule 29 motion. But in the government's view, the factual record was closed. Did you make that argument to us on appeal? We made it very clearly with respect to Mr. Martinez. We asserted plain error that his objection on the fourth day of trial was not sufficient to put this in play. But I will then address the merits. And I'll start with Mr. Martinez and then I'll go to Mr. Rosario. Mr. Martinez is challenging the slice of the certification that reported that somebody on this vote asserted Dominican registry. And in the government's view, that falls under the public records exception 8038. We did not make the argument that the federal rules of evidence did not apply in the proceeding. We are proceeding on the premise that they do. But that statement falls under this exception because it is the statement of a public agency setting forth a routine activity of that agency. The Coast Guard polices the waters. They interact and intercept with boats as part of that process. They collect registry information. That is a routine activity. Now, Mr. Schimper is quite right that the Coast Guard has a law enforcement function. But still under 8038, law enforcement observations about routine, inherently non-adversarial observations or facts still come in. That's this Court's decision in the Doddle case. Doddle was information on a booking sheet. And the question, where are you from or where were you born, in the government's view, is completely analogous to the question that would have been asked here, where is this boat from? So we think Doddle controls. It's a mechanical question. Why is that quite right, though? In the question of where are you from, that's not going to be plausibly relevant to whether they're guilty or not in the ordinary case. But the question of where is your boat from is determinative of whether they can be criminally liable. It's a determination of the threshold question of jurisdiction. Yeah. The statute makes clear. But that's just not true in the ordinary booking questions. So it's not the statute makes clear that it has no relevance to the defendant's guilt or innocence. I understand that, but it has relevance to whether they can be found guilty of the crime because if there's no jurisdiction, they can't be. That's just not true of the ordinary booking question. So I guess I'm seeing a distinction between. No, I understand what the distinction is. I'm asking a different question. There is also a distinction between the jurisdictional question here and the ordinary booking question of where you're from because where you're from is not going to determine whether you can be found guilty. But the question of where your boat is from might. I agree it has significance in that respect. So why isn't that significance that matters for purposes of whether we should apply the hearsay exception? So the government's view, when we're looking at routine activities versus law enforcement observations, that law enforcement observations relate to facts that ultimately will be addressed at trial, whereas this is not. But this will be addressed at a preliminary hearing that will determine whether you can go to trial. We're not going to adjudicate where the defendant is from in most cases, criminal cases ever, because we don't care. It has nothing to do with whether they can be held criminally liable. Even accepting that distinction, there are other points that tip the scales in favor of recognizing this as a statement of a public agency. It's still a mechanical question. It doesn't involve the type of perception biases that you normally think of in a law enforcement setting that the officer is acting as a scribe. And finally, and most importantly, this was the question asked in Doddle, does the Coast Guard officer here on the ground, I guess on the boat, have any incentive to do anything other than accurately record the information? And the answer is no. Well, once someone claims that the boat, a potential defendant says, yeah, this boat is registered in wherever, the Coast Guard then has an obligation to query that government as to whether that's true and whether they relinquish whatever jurisdiction they might have to the United States as the interdicting authority. Yes, sir. Now, if they don't say anything at all, it's a stateless boat. Correct. And the United States has jurisdiction. Correct. So the question which I think they're raising is the following. If you have to make the inquiry, you have to make the inquiry correctly. In other words, you have to say, he says it's the Dominican Republic, and the boat's name is spelled out on the transom, and you have to transmit that correctly to the Dominican Republic. When the answer comes back with a different name, in this case somewhat different, that the government, he says, has a further obligation, which is to re-query. And he says that when they don't do that, under the normal rules of evidence, forgetting the fact that the certificate is binding, why doesn't he have a right to say to the government, you didn't really prove that this was a stateless boat, and that the Dominican Republic wouldn't have accepted and said, yes, we're going to handle this, not you, because somehow in the transmission it came out incorrectly. Yes, Your Honor. The government's view is that Congress took that question out of this sort of adversarial, let's have witnesses from the Coast Guard and maybe a witness from the Dominican Republic to say, what were, in fact, the consultations here? Were they sufficient? Were they deficient because there was a typo? Was the government just negligent? Congress took that out of that setting and put it in the hands of the Secretary. And as this Court said in the Cardales-Lunas case, all the government needs to do to satisfy the MDLEA is have the Secretary certify, in this case, have the Secretary certify that the foreign nation did not unequivocally assert registry. That's the only evidentiary point that's in dispute. There may be. But even if they didn't ask? Your Honor, if there was. Suppose the certification said we didn't ask them, but they told us they don't know if it's their vote. If the certification said we never asked the country, then I think the certification would be deficient. Okay. So then that's sort of their argument, which is how do we know that they asked them? So that implicates the back and forth between the Dominican Republic and the Coast Guard. And the government's view is that if there's any deficiency in that process, that's an injury to the Dominican Republic. Let's assume that the transom said the vote was the Mary Jane. And what came back to the Dominican Republic was we do not find the Sally something or other on our registry and we do not take jurisdiction. And it's clearly wrong. It's not just a misspelling. It clearly doesn't seem to be responsive. Do you then have the ability to go in and say, hey, wait a minute, that's completely unresponsive. And how can that be binding? So the government's view is that the defendants can't go, in this case, get records from the Dominican Republic to show some confusion or disconnect in the consultation process, come into court, and challenge the Secretary's certification. To the extent that an objection could be raised in that setting, the Dominican Republic would need to do it. It's only the Dominican Republic. Your position, and I think the statute may bear that out, is that this is between governments and it has really nothing to do with the defendant, per se. This is what this Court said most recently in Mitchell-Hunter. Any deficiency here implicates the rights of nations, not the defendant. The question of who should take ownership or jurisdiction over the boat, that is a discussion or decision to be had between the governments. It has nothing to do with the individual defendant's rights. Correct. But let me take the counterfactual. Let's assume that this certification, and this goes a little bit to Judge Sorkin's question, let's assume the certification can't be conclusive in light of the facts or the evidence that the defendants proffered. The District Court, this is at document 108, in denying the judgment of acquittal by Mr. Rosario, says, all right, I'm still not entertaining this motion. This is a dispute. Injuries of international law are not cognizable. And then on page 11, the Court further finds, based on the evidence presented, that the Coast Guard complied with due diligence at the time of the interdiction and in declaring the vessel to be without nationality, based on the information provided by the Dominican Republic and the defendants. And so I think what the Court's doing is saying, all right, even if it's not conclusive, I'm going to look at everything that's been assembled before me. And so the Secretary of Certification, the photos of the boat, of the surveillance of the interdiction and the boarding, the Coast Guard commander's testimony that he inspected the boat and saw no indicia not just of registry, but no markings of any country of origin. And then on page 12, right after this observation, the District Court makes a remark, listen, neither defendant has produced any evidence to the contrary, a registration certificate, a boat number, anything, to give me some sway as to the contrary position, that this was, in fact, registered in the Dominican Republic. So even if we're wrong, the certificate does not have the force that we say it does, the District Court could make that finding more likely than not that this vessel was stateless, and there's no clear error. Now, that's relevant, that inquiry, only if they've – the way the Dominican Republic responds is relevant only if someone on the boat first claimed it to be a Dominican. That's correct, Your Honor. And you concede that the certification is not conclusive as to whether that statement was made? Yes, that's correct. So you can only – what happens if we were to disagree with you on the hearsay exception? You then concede there's no jurisdiction? We have a harmless – I think we have a fairly convincing harmless error argument in our brief. So we have a homemade boat found in the narrow strait of water between the Dominican Republic and Puerto Rico, and we also know from Mr. Rosario's confession that that boat launched from the Dominican Republic. Just a footnote, there are no Bruton or Confrontation Clause issues there because – and me relying on that because this is a pretrial jurisdictional inquiry, this Court has said Confrontation Clause doesn't reach to that earlier question. And then – so we know where the boat's from. We know from the Secretary's certification that the Coast Guard contacted the Dominican Republic after the interdiction. And then we also have this fact that, as the District Court pointed out, Mr. Rosario and Mr. Martinez have never claimed otherwise, even though it would have been their incentive to say no, that we claim Guatemala or we claim Costa Rica to try to derail this proceeding. So even if you take out that one slice of the certification, I think the harmless error – the Court still should make the same inference that somebody aboard this boat said the Dominican Republic. Otherwise, why are they contacting? Exactly. And if they said nothing and it was just the name and no one said anything, you'd have jurisdiction. This is another point that we put in our brief. If you take that out, the record is now silent, and then it's a stateless vessel anyways. So the only way they could be in a beneficial position if they said something other than Dominican Republic or not. Exactly, Your Honor. And there's nothing in the record that would suggest that either of those is a reasonable inference. That's exactly the case, Your Honor. In my remaining time, unless the Court has any more questions about the MDLEA, I'll jump to the Bruton issues. So the government admitted Mr. Rosario's sanitized confession at trial. It doesn't raise a head-on Bruton issue because it did not directly implicate Mr. Martinez. It doesn't fall under gray because it didn't contain the obvious indicator of redaction. So we're into this third category. And so while it implicated Mr. Martinez, it implicated me in the broader conspiracy. The jury knew why I was on the boat, thanks to Mr. Rosario's confession. I think this Court answered that question in the Celestine case. In that case, to defend a trial, government had charged the defendants, well, with conspiracy to commit bank fraud. And in that case, the objecting defendant said, even allowing this sanitized confession in, that lessened the government's burden of proof on showing the overarching conspiracy. And this Court, it's at page 20 of Celestine, says, no, that's not a Bruton problem. Just because the co-defendant's confession relates to the overarching conspiracy doesn't trigger Bruton, so long as the government is not using the confession directly to throw the objecting defendant into that conspiracy. And that didn't happen here. But is that totally true about the part that I'm not entirely sure what your answer is to, is at the end in the prosecutor's statement. They do seem to use the confession to say, if I understood counsel correctly, that the conspirators, the other people, wouldn't allow people on the boat who weren't part of the conspiracy. Now, is that an accurate rendition of what? Yes. Okay. That comes only from the confession. Correct? I disagree. I think the government, the prosecutor, could fairly urge that reading of the evidence. And keep in mind, before she did this, she had just told the jury, don't consider resigning. But is she relying on the confession there in saying people would not, those conspirators would not let someone on the boat if they weren't part of their conspiracy? No, she's just using, are you drug traffickers in general? And you can certainly infer that by virtue of the 66 kills. Would you concede that if she were to say, look, the confession says, we know from the confession that the other conspirators would not let someone on that boat unless they were part of the conspiracy, that that would effectively be using the confession directly against the co-defendant? I'm inclined to say yes, Your Honor. Okay. So your argument then depends on us concluding that the confession was never used to make that point. Yes. Yes. If the government cannot, at closing, say, look at But was the confession entered into evidence? How does the confession come in? The confession comes in through the test of, well, there's the pretrial, the voir dire, and then the DEA. But in the confession, is there a statement in the confession that the jury would have heard, that the other conspirators would not have let someone on that boat if they weren't part of the conspiracy? No. There's not? No. I can give you the Yeah. So the confession is at transcript 127, pages 106 through 107, 130 through 131. All it is, and I can summarize it. Rosario received a call from his drug associates. He went to meet them in the Huey area. Rosario attended the meeting. He saw the bails. Rosario moved to the Vallejibe. They got the boat. Rosario moved to the island, received the drugs, departed for Puerto Rico. The prosecutor is making an inference about the fact that this was a drug trafficking organization based on the size of the cocaine. 66 kilograms, over $2 million street value. The prosecutor is arguing the inference that Martinez had full knowledge of this. Whoever organized this trip would not have put a stranger on the board. Now, this court has recognized that inference in Ayala Tapia and Thomas as reasonable. There was, of course, expert testimony relaying that in those cases. But this court also cited, in Ayala Tapia, to the Rodriguez case from the Tenth Circuit, which just catalogs all these cases. This is a fair inference that the prosecutor can argue to the jury, drawn just from the value of the drugs. And, again, the prosecutor closed by saying Martinez was put on that boat for a reason. Expert testimony that there's always two operators on the boat. And, again, that's consistent with the fact that the Coast Guard spotted him tossing the cocaine off. So, just as a side, of all the closing argument objections, we don't think it's rolled into one. If the Bruton claim and then the closing argument claim, which is plain error because there's no objection below. Even if it was error at closing argument, we don't think it can be plain in light of the fact that the prosecutor stated at the beginning, don't use this against Mr. Martinez. Isn't flagrant. The district court instructed the jury on that fact. And we think we have overwhelming evidence of guilt. And circling back in my remaining 20 seconds to the Bruton claim, even if this was somehow error, the admission of the sanitized confession was somehow error, this is a question I think Judge Stahl started out with. These are two men on the boat heading towards Puerto Rico, three miles from shore, throwing millions of dollars of cocaine into the ocean. Clear evidence of possession. Quantity is clear evidence of intent. And from these facts alone, any jury would have put these two in a conspiratorial relationship. I think it passes Chapman harmless error quite easily. Thank you. Thank you, Your Honors.